# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SARA MAMMARELLA | * | CIVIL ACTION NO. |
| | * | |
| Plaintiff, | * | |
| VS. | * | JUDGE |
| | * | |
| CITY OF NEW ORLEANS | * | |
| | * | MAGISTRATE JUDGE |
| | * | |
| Defendant. | * | |
| | * | JURY DEMAND |
| | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PETITION FOR DAMAGES

1.    **NOW INTO COURT,** through undersigned counsel, comes complainant Sara Mammarella, who brings this action against the City of New Orleans. This is an action to halt and seek redress for the unlawful harassment and deprivations of liberty that Defendant has implemented in its practices.

2.    42 U.S.C. § 1983 dictates that "every person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."

3.    Despite these mandated provisions, the Defendant has violated the Plaintiff's rights by depriving her of her rights and privileges.

## JURISDICTION

4.    The following causes of action are based upon defendant's violations of Federal

law, including but not limited to 42 U.S.C. § 1983.

5.     This United States District Court has jurisdiction in this matter under 28 U.S.C. § 1331 and § 1343 for matters of federal question and civil rights under 42 U.S.C. § 1983. Additionally, the Court has supplemental jurisdiction over any state law claims.

## VENUE

6.     Venue is proper in the Middle District of Louisiana under 28 U.S.C. § 1391 where defendants are subject to personal jurisdiction, where defendants are located and operate in the state of Louisiana, and where the unlawful acts and discrimination complained of occurred in such district.

## PARTIES

### PLAINTIFF

7.     **Sara Mammarella** (hereinafter "Ms. Mammarella"), is a woman of the age of majority and at the relevant time was a resident of the State of Florida and is Plaintiff therein.

### DEFENDANT

8.     **The City of New Orleans** (hereinafter, the "City"), a political subdivision of the state of Louisiana, organized pursuant to the authority of the Constitution of the State of Louisiana and the Home Rule Charter for the City of New Orleans. It can be served with process through the Office of the City Attorney, Sunni LeBeouf in accordance with La. C.C.P. art. 1265.

## FACTUAL ALLEGATIONS

9.      On the morning of January 28, 2018, Ms. Mammarella was involved in a single car accident near the intersection of Lake Marina Drive and Lakeshore Drive in New Orleans, LA.

10.      Ms. Mammarella's car hydroplaned while travelling. She lost control of her vehicle and subsequently struck a nearby telephone pole.

11.     When police arrived, Ms. Mammarella had no recollection of the events that led to her crash, and she was suffering from a head injury. Responding officers called New Orleans EMS to treat Ms. Mammarella.

12.     Ms. Mammarella initially denied treatment for her head injury from these EMS officers. She signed an "Against Medical Advice Refusal," which was approved by a doctor. Ms. Mammarella should have never been given the option to refuse medical treatment. Given her head injury, she did not have the necessary capacity to make this decision. She was subsequently released into police custody.

13.     Under suspicion of DWI, the responding New Orleans Police officers seized and arrested Ms. Mammarella at the scene, with no probable cause or reasonable suspicion. While in police custody, Ms. Mammarella requested a blood and urine test, which was denied. She did so while suffering from a head injury, hindering her capacity and decision-making.

14.     It was also during this time that Ms. Mammarella began feeling lightheaded and woozy, as well as complaining of a laceration to her head. She also complained of pains in her chest and stated that she felt she may pass out.

15.     Ms. Mammarella began requesting further medical care while in police custody. The officers initially denied Ms. Mammarella further attention, reminding her that EMS had inspected and addressed her wounds at the scene of the crash at 3:32AM. Ms. Mammarella continued to insist upon further medical case, bleeding from the laceration on her face while doing so.

16.     After requesting to speak to a commanding officer, Ms. Mammarella was

introduced to the on-duty sergeant of the traffic division, Officer Russel Philibert. He also initially reminded Ms. Mammarella of the previous medical attention she received from EMS at the crash site, before eventually calling EMS back to further inspect Ms. Mammarella.

17.    Ms. Mammarella also repeatedly requested to speak to her attorney, a request that was consistently denied by both the booking officers and Officer Russel Philibert. After being asked outright by Ms. Mammarella if he was refusing to let her call her legal counsel, Officer Philibert responded, "At this time, yes. You will be given the opportunity to call counsel. Not at this time; we'll let you know when."

18.    Once EMS technicians returned, they placed a bandage over the laceration on Ms. Mammarella's head and checked her vital signs. They asked Ms. Mammarella if she recalled being examined by EMS techs earlier at the crash site, and she responded that she did not recall such a thing.

19.    After being examined again, Ms. Mammarella was again asked to submit to a breathalyzer test, which she was in no capacity to refuse or deny, due to her head injury. She again requested to speak to an attorney. Ms. Mammarella also again requested medical attention for the laceration on her head. The on-duty sergeant asked for the name of her attorney, which Ms. Mammarella did not provide.

20.    Ms. Mammarella was asked to answer interview questions during her arrest, but she declined to do so. At this point, Ms. Mammarella was transported by NOPD officers to University Medical Center in New Orleans.

21.    While at University Medical Center, NOPD officers refused to allow medical examiners to withdraw blood and urine samples from Ms. Mammarella, interfering with their own investigation and her rights to proper medical care. Additionally, at one point, one of the officer's

body cameras captured Ms. Mammarella's personal medical information, recording it into public record.

22.       Throughout the course of Ms. Mammarellas's arrest, medical examination, and booking, other NOPD officers were onsite at the accident scene, overseeing the removal of her vehicle. Video recordings from the body cams of the officers show one of the officers remarking, "She must have wanted him bad last night," and "She must have been flooring that motherfucker," as well as referring to Ms. Mamarella as "the white lady."

23.       During another part of the video, the other responding officer at the crash site claims that Ms. Mamarella was going to her ex's house for a "booty call" and "to get some real quick." The officers also both speculate that Ms. Mamarella was intoxicated, despite having no proof of this fact. One officer mentions that Ms. Mamarella works in the public defender's office, to which the other responds, "Well there it go! There it is. She know. She know. That's the number one thing they teach them – don't blow. Her license gonna be suspended, and that's it. You can't prove that she . . . so, she know the game."

## COUNT I: VIOLATIONS OF THE 4TH AND 14TH AMENDMENT IN RELATION TO 42 U.S.C. § 1983

(42 U.S.C. § 1983 claim against Defendant for Deprivation of Liberty)

24.       Paragraphs 1 – 23 above are restated as if fully incorporated herein.

25.       42 U.S.C. § 1983 dictates that "every person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983 protects individuals from violations of their federally protected rights. A government entity is liable under Section 1983 when its police or customs

violate an individual's federally protected rights.

26.     The Fourteenth Amendment of the U.S. Constitution ensures that no person shall be deprived of life, liberty, or property without due process of law, and promises equal protection under the laws of the United States. Denying Petitioner immediate and proper medical care when requested, and while in police custody, violated her Constitutional rights under the Fourteenth Amendment by depriving her of life and liberty to seek medical care for her potentially life-threatening injuries.

27.     Plaintiff here was denied immediate and swift medical attention under the reasoning that she had already refused medical attention at the scene of her car crash. This denial of medical attention was given despite the fact that Plaintiff was bleeding from a face laceration and complaining that she felt she may lose consciousness. Such actions constitute a violation of Petitioner's right to equal protection under the Fourteenth Amendment.

28.     Plaintiff initially refusing medical care in the immediate aftermath of her car crash and while in a disorientated state is not a legitimate or reasonable basis to deny Plaintiff further medical care while in police custody.

29.     The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." Ms. Mammarella was seized and arrested at the scene of the crash, with no reasonable suspicion or probable cause, in violation of her Constitutional rights. This was a violation of the Fourth Amendment and its protection against unreasonable searches and seizures.

30.     In further violation of her Constitutional rights, Ms. Mammarella was denied

access to her attorney multiple times. The willful and wanton obstruction of permitting Ms. Mammarella to contact her attorney was a violation of the Fourteenth Amendment's guarantee that no person shall be deprived of life, liberty, or property without due process of law. Ms. Mammarella was deprived of her constitutional right to due process of law through the actions of the officers on duty. She was unable to seek advice from counsel while being arrested.

30. Defendants acted willfully, knowingly, and purposefully and/or with deliberate indifference to deprive Plaintiff of her Constitutional Rights. The City of New Orleans is responsible for maintaining a facility in which employees are improperly trained. Defendant knew or and disregarded the excessive risk to Ms. Mammarella's health and safety, in violation of 42 U.S.C. § 1983. As a result of the nature of Defendant's conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants for this unreasonable deprivation of her rights.

## COUNT II: NEGLIGENCE

31. Paragraphs 1 – 30 above are restated as if fully incorporated herein.

32. Defendants' actions and omissions were negligent and reckless, including but not limited to:

   a. Negligent tactics and handling of the situation with Plaintiff;

   b. The failure to properly train, supervise, and discipline employees, individual defendants;

   c. The failure to adopt and enforce reasonably appropriate policies, practices, and procedures;

   d. The negligent hiring, retention, and assignment of employees with records of complaints against them; and

e. Condoning a pattern, practice and/or custom of officer intimidation and abuse, and by failing to take appropriate and reasonable measures to ensure that persons in police custody are afforded the proper medical attention.

f. Dereliction of duty.

g. Other negligence which may be proven at the trial on this matter.

33.     As a direct and legal result of Defendant's acts and omissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, extreme emotional distress, attorneys' fees and costs, and other pecuniary losses not yet ascertained.

34.     Plaintiff alleges that the acts of the Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, welfare, and safety, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial.

## COUNT III: VIOLATION OF STATUTORY CIVIL RIGHTS – CLAIM FOR COMPENSATORY DAMAGES

35.     Paragraphs 1-34 are restated as if fully incorporated herein.

36.     The intentional acts inflicted upon Plaintiff by Defendant were done with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate disregard for the statutory civil rights of Plaintiff.

37.     Defendant employees of the City of New Orleans are all liable individually and in their official capacities for an award of compensatory damages for Plaintiff's physical and emotional injuries and distress.

## COUNT IV: VIOLATION OF THE RIGHT TO PRIVACY OF MEDICAL INFORMATION UNDER THE FEDERAL CODE OF REGULATIONS

37.     Paragraphs 1-36 are restated as if fully incorporated herein.

38.     Section 164.502 of Federal Code of Regulations protects an individual's right to privacy when it comes to their health information. Titled "Uses and Disclosures of Protected Health Information: General Rules," it states, in part: "A business associate may use or disclose protected health information only as permitted or required by its business associate contract or other arrangement pursuant to § 164.504(e) or as required by law. The business associate may not use or disclose protected health information in a manner that would violate the requirements of this subpart, if done by the covered entity, except for the purposes specified under § 164.504(e)(2)(i)(A) or (B) if such uses or disclosures are permitted by its contract or other arrangement." 45 C.F.R. § 164.502(a)(3).

39.     Through video-recording sensitive health information belonging to the Plaintiff, the New Orleans Police officer that did so ensured that her private health information was forever entered into the public record. This was a violation of her rights under the above-referenced section and the Health Insurance Portability and Accountability Act.

## COUNT IV: CITY OF NEW ORLEANS LIABLE UNDER DOCTRINE OF *RESPONDEAT SUPERIOR*

40.     Paragraphs 1-39 are restated as if fully incorporated herein.

Plaintiff re-alleges and incorporates by reference paragraphs 1-35. At all times pertinent hereto, the Defendant police officers were acting within their scope of employment with the City of New Orleans and the New Orleans Police Department.

41.     A number of the officers involved in this entire ordeal have outstanding complaints against them that are of a similar nature to Ms. Mammarella's. Because of these prior complaints, the City of New Orleans was on notice of their bad behavior and practices and did nothing to ensure they did not continue.

42.     Under the doctrine of *Respondeat Superior*, the city of New Orleans is liable for intentional infliction of emotional distress and failure to supervise employees, 42 U.S.C. § 1983 and 42 U.S.C. § 1986 for the violations committed by Defendant.

## JURY TRIAL REQUEST

43.     Plaintiff hereby notifies the Court and Defendant of her intent to seek a trial by jury in this matter.

## REQUEST FOR RELIEF

44.     WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in favor of Plaintiff and against Defendant and award the following relief:

a. Appropriate injunctive relief, including but not limited to an order restraining Defendant from further violating others' due process rights;

b. Compensatory and consequential damages, including for emotional distress, against Defendant;

c. Punitive damages against Defendants;

d. Pre-judgment and post-judgment interest and the highest lawful rate;

e. Attorney's fees and costs of this action;

f. A complete purge of all booking records, photographs, and any other materials related to the improper arrest of Plaintiff; and

g. Any such further relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

/s/ John E. Bicknell, Jr.
Galen M. Hair, T.A., LSBA No. 32865
Sarah M. Kalis, LSBA No. 37186
John E. Bicknell, Jr., LSBA No. 36802
**SCOTT, VICKNAIR, HAIR
& CHECKI, LLC**
909 Poydras Street, Suite 1100
New Orleans, Louisiana 70112
Telephone: (504) 684-5200
Facsimile: (504) 613-6351
*Attorneys for Plaintiff*

**PLEASE SERVE:**

**CITY OF NEW ORLEANS**
Through the City Attorney
Sunni LeBeouf
1300 Perdido Street
New Orleans, LA 70112